UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| WILLIAM DISHMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 22-233-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff William Dishman appeals the Acting Commissioner of Social Security's denial of his claim for disability insurance benefits and supplemental security income. Dishman contends that the ALJ assigned to his case improperly relied on findings from a previous decision when determining his present inability to work. But upon review of the record and the parties' arguments, the Court finds that the ALJ's decision is based upon substantial evidence and correctly applied rules of law. As a result, the defendant's decision will be affirmed.

**I.**

Dishman filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on January 21, 2020, alleging disability beginning on March 1, 2019. [*See* Administrative Transcript, hereafter, "Tr." 271-83] His claim was denied initially and upon reconsideration. [Tr. 126-80, 185-93, 200-07] ALJ Tommye Mangus held a telephonic administrative hearing on October 26, 2021, and issued a written opinion denying benefits on November 17, 2021. [Tr. 51-62, 89-102] The Appeals Council denied Dishman's request for

- 1 -

review on October 27, 2022. [Tr. 1-7] The plaintiff filed his Complaint challenging the Appeals Council's denial of his request for review on December 22, 2022. [Record No. 1] The matter has been fully briefed and is ripe for judicial review. *See* 42 U.S.C. § 405(g).

## II. Background

Dishman was 42 years old at the time of ALJ Mangus' decision. He has a high school education and previously worked as an automobile mechanic. [Tr. 100, 315] Dishman is married and lives with his wife. [Tr. 58] The plaintiff alleged that he became unable to work on March 1, 2019, due to injuries to his back and lower extremities, depression, and high blood pressure. [Tr. 314] He reported being five feet, eight inches tall and weighing 268 pounds. [Tr. 314]

The administrative record indicates that Dishman received treatment for low back pain for several years. He received an MRI in February 2018, which revealed a "large disc extrusion at [the] L5/S1 [level] with moderate bilateral neural foraminal narrowing and mild canal stenosis." [Tr. 111] This condition was partially treated by a prior laminectomy, although the defendant elected not to undergo additional surgery for further treatment. [Tr. 111]

At times relevant to this matter, Dishman received regular treatment from primary care providers Richard Mayer, M.D., and Matthew Eaton, D.O., with Monticello Medical Associates. [Tr. 588-616] During a visit with Dr. Mayer on March 20, 2019, Dishman stated that his lower back pain was "sudden and has been occurring for 3 years." [Tr. 616] He continued reporting pain in his lower back and left hip during monthly visits. [Tr. 589, 591, 593, 595, 597, 599, 601, 603, 605, 607, 609, 611, 614] According to Dr. Eaton, Dishman's symptoms were "relieved by non-opioid analgesics and opioid analgesics," and he experienced

"good compliance with treatment, good tolerance of treatment and fair symptom control." [Tr. 597]

Dishman was prescribed Norco (325 mg.) and Gabapentin (800 mg.) for back pain. [Tr. 596, 598, 600, 602, 604, 606, 608, 610, 612] Further, physicians recommended that he quit smoking and lose weight. [Tr. 614, 615] Dishman's BMI stayed between 37 and 40 throughout the relevant period. [Tr. 589-616] However, his BMI was reported at 34.95 during a visit with Dr. Eaton on April 22, 2021. [Tr. 770]

Dishman visited APRN Susan Sloan on October 7, 2020, for an internal medicine consultative examination. [Tr. 655-58] Sloan reported that the plaintiff's "muscle bulk and tone were good" and that his joints had a "full range of motions." [Tr. 656] He was able to flex his back to 90 degrees and complete "straight leg raises . . . to 30 degrees bilaterally in the supine position, stopping due to back pain without radiculopathy." [Tr. 657] Additionally, Dishman completed straight leg raises to 90 degrees while sitting with "no complaints of back pain or radiculopathy." [Tr. 657] Sloan further reported that the plaintiff's gait was steady, that he could "ambulate without the use of an assistive device," that his muscle strength tested at "5/5 in all major muscle groups," and that he experienced normal sensation in his upper and lower extremities. [Tr. 657]

Sloan stated that Dishman probably experienced pain in his back, hips, legs, and feet as a result of the herniated disc in his lumbar spine but opined that the radiology reports he submitted were "too old to be useful." [Tr. 657] She noted that the plaintiff only complained about his pain "during passive supine straight leg raises." [Tr. 658] She recommended "limit[ing] activities which require bending and stooping" and stated that Dishman should not "lift anything heavy or raise anything heavy above his head." [Tr. 658]

Agency consultant Donna Farmer, M.D., reviewed Dishman's record in January 2021 to evaluate his residual functional capacity ("RFC"). [Tr. 157-161] Dr. Farmer concluded that the plaintiff's RFC had not changed significantly since his prior disability determination in 2019. [Tr. 159] Dr. Farmer reported that Dishman experienced functional limitations in "lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, using hands and stair climbing," and that he had pain in his back and hips. [Tr. 158] However, she concluded that, despite his limitations, he retained the RFC to engage in light work. [Tr. 160]

Agency consultant Paran Saranga, M.D., also reviewed Dishman's record in March 2021. [Tr. 172-73] Dr. Saranga found that the plaintiff experienced exertional limitations due to his obesity, back pain, hypertension, and tobacco use. [Tr. 172] Dr. Saranga further concluded that the plaintiff sustained the capability to perform light work, if he "avoid[ed] vibration, unprotected heights, hazards, dangerous machines, [and] moving equipment operations." [Tr. 172]

During his administrative hearing with the ALJ, Dishman testified that he experienced constant pain in his back and hips which sometimes radiated down both legs. [Tr. 114] He reported that he took medication for this pain, which made his condition "somewhat tolerable." [Tr. 95] And he explained that he could stand up for "less than ten minutes" and could sit in a chair for approximately twenty minutes before his pain became unbearable. [Tr. 97-98]

A vocational expert testified that, due to Dishman's limitations, he would be unable to perform his past work. [Tr. 100] However, the vocational expert offered that an individual with the defendant's age, education, past work experience, and physical limitations could obtain work involving a "light level of exertion" at SVP level 2, including jobs such as a product marker, packager, or an inspector. [Tr. 100]

- 4 -

Dishman filed an earlier claim for DIB and SSI in May 2017, alleging disability beginning January 1, 2017. [Tr. 103-19] ALJ Mangus denied this prior application on February 6, 2019, explaining that while Dishman suffered the same severe impairments of degenerative disc disease of the lumbar spine and obesity, he retained the RFC to "perform light work with appropriate postural and environmental limitations." [Tr. 113] The ALJ noted that the plaintiff's symptoms did not amount to extreme limitations because he received regular medication for pain and he had rejected a surgical option on two occasions, "reporting that he was working odd jobs and could not take time off for surgery." [Tr. 111]

ALJ Mangus denied Dishman's most recent applications on November 17, 2021. [Tr. 54-62] The ALJ explained that her decision would be controlled by the prior findings in her February 2019 decision "unless there is new and material evidence." [Tr. 54 (citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997))] Like in her previous decision, ALJ Mangus concluded that Dishman suffered from the severe impairments of degenerative disc disease of the lumbar spine and obesity under 20 CFR 404.1520(c) and 416.920(c). [Tr. 57] She also found that the defendant's impairments did not meet or equal any listing level impairment in 20 CFR Part 404, Subpart P, Appendix 1. [Tr. 57]

ALJ Mangus found that, despite Dishman's severe impairments, he had the RFC to perform light work "except he can never climb ladders, ropes, or scaffolds. He can perform no more than occasional climbing of stairs and ramps, stooping, kneeling, crouching, or crawling. He can perform no more than frequent balancing. He must avoid concentrated exposure to vibration, unprotected heights, and dangerous machinery." [Tr. 58 (citing 20 CFR 404.1567(b) and 416.967(b))]

The ALJ also found that Dishman's claims about the "intensity, persistence, and limiting effects" of his symptoms were unsupported by medical evidence in the record. Regarding his claimed pain in his back and legs, ALJ Mangus determined that there were "no significant change[s] in his complaints, physical capabilities, or treatment" since her February 2019 decision. [Tr. 59] The plaintiff's application showed that he continued to receive treatment for his herniated disc from his primary care providers. [Tr. 59] And while his doctors reported that his BMI was in the obese range, he was not in acute distress, had normal muscle strength and tone, and his conditions were adequately managed with medication. [Tr. 59]

Moreover, ALJ Mangus found that Dishman's internal medicine consultative examination with Sloan was "grossly unremarkable except for noting some back pain without radiculopathy during straight leg raising in the supine position." [Tr. 60] The ALJ found as persuasive Sloan's opinion that it "would be reasonable to limit activities that require bending and stooping and that the claimant should not lift anything heavy or raise anything heavy above his head." [Tr. 60]

The ALJ also found persuasive the opinions of Drs. Farmer and Saranga, that "no material change in the claimant's severe impairments and adopt[ing] the residual functional capacity set forth in the [February 2019] decision." [Tr. 60] However, the ALJ determined that the opinions of Dr. Matthew Eaton (Dishman's family physician) were unpersuasive. Eaton indicated that Dishman was unable to use his hands or fingers, and that the plaintiff could not perform "low stress" jobs. [Tr. 762, 764] But the ALJ noted that the objective testing showed that Dishman had "full range of motion in all extremities" and experienced "fair to good control of symptoms with routine follow-ups for medication management." [Tr. 60-61]

The ALJ ultimately determined that although Dishman could no longer perform his past work as an automobile mechanic, he was capable of "making a successful adjustment to other work that exists in significant numbers in the national economy," including in occupations "such as product marker . . . packager . . . and inspector."  [Tr. 61-62]  Accordingly, she concluded that Dishman was not under a disability as defined under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.  [Tr. 62]

### III.  Legal Standard

A "disability" under the Social Security Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in "gainful activity" at the time of the disability application.  *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018); 20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that he suffers from a severe impairment or a combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled "by default."  *Earley*, 893 F.3d at

931; 20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot determine whether he is disabled based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work despite his impairment.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If he can, he is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant can no longer engage in his past work, the Commissioner will consider whether someone with the claimant's RFC, age, education, and past work experience could "adjust to other work available in the national economy."  *Earley*, 893 F.3d at 931.  If the Commissioner determines that the claimant can perform other work, then he is not disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Thus, this Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching her decision.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (noting that the threshold for establishing that substantial evidence supports a decision is "not

high").  The Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

## IV.  Discussion

### A.  The ALJ Was Entitled to Review Findings From a Prior Decision

According to Dishman, ALJ Mangus erred when she denied his most recent claims for DIB and SSI by improperly relied on her decision denying his previous application.  [Record No. 9, pp. 3-4]  He explains that the ALJ used the same language in both decisions and at his October 2021 administrative hearing, including that the plaintiff retained the RFC to perform light work "except he can never climb ladders, ropes, or scaffolds.  He can perform no more than occasional climbing of stairs and ramps, stooping, kneeling, crouching, or crawling.  He can perform no more than frequent balancing.  He must avoid concentrated exposure to vibration, unprotected heights, and dangerous machinery."  [Tr. 58, 109] Dishman contends that "pull[ing] . . . [language] from the first decision" proves that the ALJ failed to adequately consider the evidence in support of his most recent applications.  [Record No. 9, p. 4]

However, as the Commissioner correctly notes, the ALJ was entitled to rely on her prior findings in deciding Dishman's most recent applications, if she considered any "new and additional evidence that might change those findings in one direction or another."  [Record No. 11, p. 5]  As the Sixth Circuit has explained, when an individual files an application for benefits for a new period of time, that second application is entitled to "independent review . . . so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold."  *Earley*, 893 F.3d at 932; *see also Drummond*, 126 F.3d at 842 ("When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances.") (citations

omitted).  And while an ALJ's findings regarding a previous application are not binding, those previous findings "are a legitimate . . . consideration in reviewing a second application." *Earley*, 893 F.3d at 933.

In this case, ALJ Mangus determined in February 2019 that while Dishman's degenerative disc disease of the lumbar spine and obesity constituted severe impairments, he nevertheless could perform light work under specified limitations.  [Tr. 109] The fact that the ALJ reached the same conclusion in her November 2021 decision, or that she used the same language, is not erroneous because her subsequent decision is supported by relevant medical evidence associated with the plaintiff's January 2020 applications.  Specifically, the ALJ considered reports from Dishman's primary care providers at Monticello Medical Associates. [Tr. 59]  She noted that his reported BMI between 35 and 40 "puts him in the obese range," but that he was not in "acute distress" and reported normal "muscle strength and tone."  [Tr. 59] Additionally, Dishman's doctors effectively treated his symptoms with Norco and gabapentin.

The ALJ also considered evidence from the internal medicine consultative examination performed by Sloan on October 7, 2020.  [Tr. 59]  She noted that, as listed in Sloan's report, the plaintiff had a full range of motion in his neck, back, and all peripheral joints, was "stable at station and his gait was steady," and could "ambulate without an assistive device."  [Tr. 59] Although Dishman's ability to raise his legs in the supine position was limited, he had no evidence of  radiculopathy,  and the ALJ found that the examination was "grossly unremarkable."  [Tr. 60]

ALJ Mangus also explained that Dishman was not referred to pain management or to a neurosurgeon since the February 2019 decision was issued, and that no "[n]ew imaging studies

[were] taken." [Tr. 60]  She stated that the plaintiff "lost some weight since the prior decision" and noted that "if he continues to lose weight his symptoms will likely improve more."  [Tr. 60]

In short, and contrary to the plaintiff's contention, the ALJ properly considered the medical evidence related to the plaintiff's second application and determined that no new circumstances warranted changing her February 2019 determination.  Her reliance on prior findings was proper and did not amount to legal error.

Dishman also suggests that ALJ Mangus was incapable of judging his claims impartially because she resolved on his prior application.  [*See* Record No. 12, p. 1.]  Courts "must start from the presumption that administrative adjudicators are unbiased."  *Wells v. Apfel*, 234 F.3d 1271, at *5 (6th Cir. 2000) (table) (citations omitted).  A party asserting prejudice may rebut that presumption by showing "a conflict of interest or some other specific reason for disqualification."  *Schwiker v. McClure*, 456 U.S. 188, 196.  Dishman has not provided any evidence of a conflict of interest, nor has he otherwise demonstrated that ALJ Mangus was not fit to decide his case.  Thus, the plaintiff's claim fails to the extent he contends that the ALJ committed legal error by not recusing herself from the matter.

### B.  Substantial Evidence Supports the ALJ's Decision

Dishman does not explain in his brief exactly how the ALJ's decision was unsupported by substantial evidence.  [Record No. 9, p. 4]  Nor does he "identify any objective medical evidence" that the ALJ failed to consider in her decision, as the Commissioner notes.  [Record No. 11, p. 4] Nevertheless, this claim will be denied because reasonable minds could accept that the relevant medical evidence adequately supported the ALJ's determination.  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 5959 (6th Cir. 2005) (citations omitted).

Although Dishman continues to suffer from back pain and obesity, the record evidence establishes that his conditions do not prevent him from performing light work with relevant limitations.  The plaintiff's primary care providers indicate that any symptoms associated with Dishman's back pain have been effectively controlled with prescription medication.  Similarly, Dishman stated during the administrative hearing that with medication his pain was "somewhat tolerable."   His primary care physicians did not refer Dishman to a specialist for further treatment for his back, and Dishman has not sought surgical intervention.   Instead, the plaintiff's doctors prescribed medication and advised the plaintiff to quit smoking and lose weight.

Dishman experienced back pain when completing one exercise during his internal medicine consultative examination.  However, he performed the other exercises with no complaints of pain during, and Sloan reported that he had full ranges of motion in his neck, back, and all joints.  Sloan's opinion that Dishman should be limited to activities that do not require bending or lifting heavy objects above his head is consistent with the vocational expert's testimony offered during the administrative hearing and is not inconsistent with the ALJ's finding that Dishman can perform light work occupations such as product maker, packager, and inspector.

## V.  Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Plaintiff William A. Dishman's request to remand this matter to the Social Security Administration [Record No. 9] is **DENIED**.  The final administrative decision of the Acting Commissioner of Social Security is **AFFIRMED**.

Dated: May 30, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky